UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA ELLIS,

            Plaintiff,                     Case No. 5:19-cv-12833
                                            District Judge Judith E. Levy
v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

            Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 18) and AFFIRM THE COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 15), **GRANT** Defendant's motion for summary judgment

(ECF No. 18), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff Barbara Ellis brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security (Commissioner)

denying her applications for Disability Insurance (DI) benefits and Supplemental

Security Income (SSI) benefits.  This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 15), the Commissioner's cross-motion for summary judgment (ECF No. 18), and the administrative record (ECF No. 11).

### A.    Background and Administrative History

Plaintiff alleges her disability began on May 5, 2010, at the age of 44.  (R. at 192, 196, 238, 250.)  She filed an application for Disability Insurance Benefits (DIB) on October 14, 2016 (R. at 110) and an application for SSI on March 13, 2017 (R. at 111).[1]  In her disability report, she lists lupus, chronic sinus problems, chronic migraines, swelling in head, covered in sores, prurigulario nodgularis (a skin condition), and cognitive disfunction as limiting her ability to work.  (R. at 230.)  Her applications were denied on October 10, 2017.  (R. at 123-138.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (R. at 139-140.)  On October 25, 2018, ALJ Terry Banks held a hearing at which Plaintiff and a vocational expert (VE), Glee Ann Kehr, testified.  (R. at 40-87.)  On

---

[1] There seems to be a discrepancy with the application dates.  Plaintiff states in her motion for summary judgment that she filed her applications on October 17, 2016, and May 1, 2017, respectively, citing the applications in the administrative record. (ECF No. 15, PageID.772 (citing R. at 192-201.)  However, both the "Disability Determination Transmittal" forms (R. at 110-111) and the Administrative Law Judge (ALJ) in his hearing decision (R. at 10) list the application dates as October 14, 2016, and March 13, 2017.  Any effect this has on my analysis and recommendation will be discussed below.

February 4, 2019, ALJ Banks issued an opinion, which determined that Plaintiff

was not disabled within the meaning of the Social Security Act.  (R. at 7-24.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at

190-191.)  However, on August 2, 2019, the Appeals Council denied Plaintiffs

request for review.  (R. at 1-6.)

Plaintiff timely commenced the instant action on September 27, 2019.

### B.    Plaintiff's Medical History

The administrative record contains approximately 326 pages of medical

records, which were available to the ALJ at the time of his February 4, 2019

decision.  (R. at 392-718 [Exhibits 1F-9F].)  These materials will be discussed in

detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since May 5, 2010, the alleged onset date.  (R. at 12.)[2]

---

[2] It must be noted that the ALJ also found December 31, 2013, to be Plaintiff's date
last insured (DLI) for purposes of her DIB claim.  (R. at 10, 12.)  Specifically, he
stated:

> With respect to the claim for a period of disability and disability
> insurance benefits, there is an additional issue whether the insured
> status requirements of sections 216(i) and 223 of the Social Security
> Act are met.  The claimant's earnings record shows that the claimant
> has acquired sufficient quarters of coverage to remain insured through

At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: migraine headaches and obstructive sleep apnea.  (R. at 12.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 13-14.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[3] and determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never be exposed to unprotected heights, dangerous machinery, or commercial driving.

(R. at 14-18.)  At **Step 4**, the ALJ determined that Plaintiff was able to perform past relevant work as a software engineer and stock broker.  (R. at 18-20.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ alternatively determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laundry worker, janitor,

---

December 31, 2013.  Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

(R. at 10.)

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

and store laborer.  (R. at 19.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 5, 2010. (R. at 20.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff alleges that her RFC assessment as well as the hypothetical question the ALJ posed to the VE, do not accurately portray her physical and mental limitations because: (1) the ALJ failed to afford sufficient weight to the opinion of consultative examiner Dr. Suezette Olaker, M.D.; (2) the ALJ provided no

6

indication that he adequately considered her medication side effects; (3) the ALJ erred in failing to account for her visual impairment in the RFC, or explain why he chose not to do so; and (4) "the finding that she could perform medium work at step five is entirely inconsistent with the *objective* medical evidence documenting reduced strength in the upper extremities, frequent falls, and unsteady gait even with the use of a walking aid." (ECF No. 15, PageID.771-772, 787-795.)[4] Thus, Plaintiff asks the Court to remand the case for further consideration of her impairments in the RFC assessment. (ECF No. 15, PageID.794-795.) The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the ALJ's RFC assessment, and that "none of Plaintiff's treating providers attributed any specific physical or mental functional limitations to her medical conditions, and the evidence in the medical record did not compel a finding of any greater limitations than the ALJ assessed." (ECF No. 18, PageID.806, 810-827.) I will address each argument in turn.

### 1.    Date Last Insured

---

[4] As will be explained more fully below, to the extent Plaintiff frames her summary judgment motion as a challenge to the ALJ's Step 5 determination (ECF No. 15, PageID.794), she is in actuality challenging the RFC determination. *See Kirchner v. Colvin*, No. 12-cv-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

In both her DIB and SSI applications, Plaintiff alleged that her disability began on May 5, 2010.  (R. at 192, 196, 238, 250.)  However, with regard to her DIB application, the ALJ concluded that Plaintiff's date last insured (DLI) was December 31, 2013 (R. at 10), a finding that Plaintiff does not dispute.[5]  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status.") (citing 42 U.S.C. § 423(a) and (c)).  Thus, the ALJ states, Plaintiff needs to "establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits."  (R. at 10.)

As the earliest medical exhibits in the administrative record are from April 2017 (*see* R. at 392 [Exhibit 1F]), almost three and a half years after Plaintiff's DIL, I do not see how they can be used to support her DIB claim.[6]  *Emard v.*

---

[5] In her motion for summary judgment, Plaintiff does not directly address any effect the DIL has on the instant appeal, stating only that she "was 48 years old on her date last insured ('DLI') for Title II benefits, December 31, 2013."  (ECF No. 15, PageID.772.)

[6] Notably, in his decision, the ALJ failed to specify that Plaintiff was not disabled under Title II from the alleged date of disability to the DIL, instead stating generally:

> Based on the application for a period of disability and disability insurance benefits protectively filed on October 14, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.  Based on the application for supplemental security income

*Comm'r of Soc. Sec.*, 953 F.3d 844, 849-50 (6th Cir. 2020) (evidence of a claimant's medical condition after the DLI may be considered only to the extent that it offers insight into the claimant's condition on or before the DLI) (citing *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993), and *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013)). Regardless, for the reasons that follow, the Court should conclude that Plaintiff's arguments do not support a remand to the ALJ for further consideration of her impairments and RFC determination.

### 2.     RFC Determination and Hypothetical Question to the VE

Again, Plaintiff asserts generally that the hypothetical question posed to the VE, as well as the RFC assessment, do not accurately portray her physical and mental limitations for several reasons.  I disagree.

The Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r*

---

protectively filed on March 13, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(R. at 20.)

*of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity."). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Pursuant to Social Security Rule (S.S.R.) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicators must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7. "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record

supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

In *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), the Sixth Circuit stated that "while the RFC should focus on [the claimant's] abilities or, in other words, what [the claimant] can and cannot do, the hypothetical question should focus on [the claimant's] overall state including [the claimant's] mental and physical maladies." But the Court later clarified that this language should not "be viewed as requiring that hypothetical questions include lists of claimants' medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631-32 (6th Cir. 2004). Instead:

> [t]he vocational expert testifies on the basis of a claimant's "residual functional capacity and . . . age, education, and work experience" and assesses whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she "can and cannot do," there exist a significant number of employment opportunities for her in the regional and national economies. The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination.

*Id*. at 633.

   a.   **The Court should conclude that Plaintiff is not entitled to remand on the basis that the ALJ afforded "little weight" to Dr. Olaker's opinion**

Plaintiff first argues that her RFC was not supported by substantial evidence because the ALJ failed to afford appropriate weight to Dr. Olaker's opinion in accordance with 20 C.F.R. § 404.1527,[7] and "[i]f the ALJ had accepted this opinion, [she] would not have been found capable of performing medium work as defined in 20 C.F.R. § 404.1567."  (ECF No. 15, PageID.791.)

To provide proper context, Dr. Olaker conducted a consultative examination of Plaintiff for the State on July 22, 2017 (R. at 469-477 [Exhibit 3F]), and opined that Plaintiff was limited to carrying, pushing, and pulling twenty pounds, and could only partially stoop and squat (R. at 474 [Exhibit 3F]).  And within the explanation for his determination that Plaintiff had the RFC "to perform a full range of work at all exertional levels" with three nonexertional limitations, the ALJ stated:

---

[7]As discussed above, Plaintiff states in her motion for summary judgment that she filed her applications on October 17, 2016 and May 1, 2017 respectively, citing each application (ECF No. 15, PageID.772 (citing R. at 192-201)), but Plaintiff's "Disability Determination Transmittal" forms (R. at 110-111) and the ALJ in his hearing decision (R. at 10) list the application dates as October 14, 2016 and March 13, 2017.  The regulations at 20 C.F.R. § 404.1527 and its Title XVI counterpart 20 C.F.R. § 416.927 apply to claims filed before March 27, 2017.  However, Plaintiff asserts that their application is appropriate because she filed her Title II application in 2016 and because "the ALJ's own analysis of the opinion evidence indicates he was analyzing it in accordance with 20 C.F.R. 404.1527." (ECF No. 15, PageID.789-790, n. 2.)  For reasons I will provide below, the Court need not scrutinize the actual date of Plaintiff's SSI application, nor decide whether 20 C.F.R. § 404.1527 and 416.927 apply here.

As for the opinion evidence, in July 2017, Dr. Suezette Olaker, M.D. completed an internal medicine consultative examination and noted the claimant was in no apparent distress.  The claimant described each condition of hers in exquisite detail and her affect and mood were normal as was her speech and conversation.  The claimant stated that she had left her past employment to care for her mother.  The claimant was able to walk on her heels, toes and tandem, and demonstrated a stable and normal gait.  It was also noted the claimant's vision was 20/25 on the right and 20/50 on the left but the claimant stated she did not wear corrective lenses.  Dr. Olaker noted the claimant could only partially stoop due to left knee pain, could only carry, push, or pull 20 pounds, could only partially squat and arise from squatting, had normal reflexes, and negative straight leg raise test.  The clinical evidence did not support an inability to stand up from a seated position, an inability to maintain balance in a standing position, or the need for a walking aid.  The claimant had decreased range of motion in the bilateral shoulders and the right elbow.  A diagnosis of lupus was made, but was based on the claimant's statements.  (Exhibit 3F).  I assign this opinion little weight as the diagnoses were based mostly on the claimant's statements and the opinion is not consistent with the longitudinal evidence of record.

(R. at 16-17.)

Even assuming, without deciding, that had the ALJ afforded more weight to Dr. Olaker's opinion, he would not have found her capable of performing medium work, the Court should deny Plaintiff's request for remand on this basis.  At Step 4, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a software engineer or stock broker as actually performed at the medium level, or as generally performed at the sedentary level.  (R. at 18.)  *See* Dictionary of Occupation Titles (DOT) 162.167-038, 169.167-030 (both professions classified as sedentary); *see also Robinson v. Comm'r of Soc. Sec.*, 426 F.Supp.3d 411, 424

(E.D. Mich. 2019) (Leitman, J.) ("As a general rule, the Step Four determination can be supported by the finding that claimant can perform his past relevant work as 'actually performed,' or, 'as generally required by employers throughout the national economy.'") (citing S.S.R. 82-61, 1982 WL 31386, *2 (1982)).  And, sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," along with "a certain amount of walking and standing."  20 C.F.R. § 404.1567, 416.967.  Indeed, Plaintiff argues only that had the ALJ accepted Dr. Olaker's opinion, she would not have been capable of performing *medium* work (ECF No. 15, PageID.791), which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c), 416.967(c).  Thus, the exertional limitations Dr. Olaker included in her opinion would have no effect on Plaintiff's ability to perform her past work as generally required at the sedentary level.  In other words, as the Commissioner asserts (ECF No. 18, PageID.816-817), the alleged error, even if true, would be harmless.  Should the Court agree with my analysis and conclusion, it need not analyze whether the ALJ adequately considered Dr. Olaker's opinion in accordance with 20 C.F.R. § 404.1527, 416.927.

      **b.**    **The Court should find no error requiring remand in the ALJ's analysis of Plaintiff's medication side effects**

Plaintiff next argues that "[r]emand is appropriate for consideration of the impact of [her] loopiness, confusion, and concentration difficulties caused by Toradol on her RFC, as neither the RFC finding nor the matching hypothetical to the VE appeared to include any limitations associated with these symptoms," citing her hearing testimony as well as medical records from October 2017 in which she reported to doctors that she suffered "GI upset at times" from her medication. (ECF No. 15, PageID.791-792 (citing R. at 65-66, 567-568).)[8]  For the reasons that follow, I disagree.

In determining whether a claimant is disabled, an ALJ must consider all of a claimant's symptoms and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a), 416.929(a); S.S.R. 16-3p.  In so doing, the ALJ should look beyond the objective medical evidence alone, to: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of a claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of the pain or other

---

[8] These records also note, *inter alia*, that she "is self-employed and works in online sales…[and] will be starting graduate school" to pursue a degree in economics, and that "[h]er headaches have had a moderate impact on her family and personal life." (R. at 568.)

symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Robinson*, 426 F.Supp.3d at 420 n.3 (citing 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3)).

Here, the Court should determine that remand for further consideration of Plaintiff's side effects from Toradol is unwarranted. First, although the ALJ did not explicitly reference Plaintiff's testimony that Toradol, the medication she takes for migraines, causes her to experience symptoms of confusion and difficulty concentrating, which last twenty-four to thirty hours (R. at 65-66), he was not required to. *Stec v. Comm'r of Soc. Sec.*, 432 F.Supp.3d 719, 727 (E.D. Mich. 2020) (Leitman, J., *adopting report and recommendation of* Whalen, M.J.) ("As a threshold matter, the requirement that the ALJ consider allegations of medical side effects does not mandate their explicit mention in the written decision." (citing *French v. Comm'r of Soc. Sec.*, No. 15-12687, 2016 WL 3951419, at *13 (E.D. Mich. June 30, 2016) (Morris, M.J.), *report and recommendation adopted*, No. 15-12687, 2016 WL 3924111 (E.D. Mich. July 21, 2016) (Cox, J.)).

Second, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p" (R. at 14), and his extensive explanation

for concluding that Plaintiff's statements concerning the severity of her symptoms are not entirely consistent with the other evidence in the record (R. at 15), confirms such consideration.  *See Stec*, 432 F.Supp.3d at 727 ("ALJ Warner's statement that she 'considered' the evidence presented and allegations regarding 'the intensity, persistence and limiting effects' of the conditions is sufficient to address the claims of medication side effects.").  Indeed, the ALJ referenced Toradol several times in the RFC portion of his hearing decision, stating:

> The claimant alleges limitations from hypersomnia, headaches, and cognitive difficulties that she indicates restrict her ability to work. The claimant said she stopped working at Repo Max in 2012 because she was making major mistakes and was not able to do basic work functions.  She stated that she has not received any mental health treatment but said she had problems with "adjustments".  She said she had migraine headaches up to three times a week and she would take Toradol for these, but she could only take this medication two times per week due to potential organ damage.

> \* \* \*

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> The claimant's testimony and reports of daily living activities do no[t] clearly support a finding that her functioning is reduced below the functional level indicated in the residual functional capacity set forth above.  While the claimant testified that she stopped working due to forgetfulness and the inability to correctly perform her job, she also reported that she stopped working to take care of her mother.

17

(Exhibit 6F/39).[9]  As for her concentration and forgetfulness concerns, she stated that she had not sought any mental health treatment and a doctor in January 2018 observed no problems with word-finding or following complex requests.  (Exhibit 9F/30).  As for her headaches, while she has been diagnosed with migraines, neither the frequency nor the intensity supports a finding of disability.  She has about 3-4 headaches a month and medications typically abort the symptoms within 20 minutes.  [(Exhibit 6F/42 and 9F/4).]  In January 2018, the treating neurologist told the claimant that he did not need to see her again (Exhibit 9F/31); she has also repeatedly declined a prescription for preventative medication for her migraines.  (Exhibit 6F/42 and 9F/4).

* * *

In April 2018, the claimant returned for a follow-up visit due to episodic headaches.  The claimant reported that she took Toradol as an abortive medication about eight times per month and declined a preventative medication at that time.  A cerebellar examination revealed normal finger to object bilaterally and intact with rapid alternating movement.  Her gait was listed as slightly unsteady with the use of two walking sticks and the claimant was oriented to person, time, and place.[10]  ANA testing was positive.  The claimant was continued on Toradol and told to return for follow-up in 6 months.  (Exhibit 6F/54).

* * *

In October 2018, Dr. Schultz recommended that the claimant add Pamelor to her current medications to assist in preventing headaches.  The claimant reported that she still took about eight Toradol pills a month for her migraines and this caused her symptoms to abort within 20 minutes.  The claimant was to return in 6 months.  (Exhibit 9F/15).

---

9 This record, from April 3, 2018, states: "Patient was a senior quality control analyst at Ford Motor Company.  She then worked as a software tester in Ann Arbor.  She has now taken a leave of absence to take care of her mother, while she was ill.  She lives on her own in South Rockwood, MI."  (R. at 602.)

10 *See* R. at 611.

18

(R. at 15-16.)

This demonstrates that the ALJ considered the whole record in accordance with 20 C.F.R. § 404.1529, 416.929, and S.S.R. 16-3p, including Plaintiff's competing explanations for stopping work, refusal to take preventative migraine medication as recommended, failure to seek mental health treatment for her concentration and forgetfulness concerns, and reports that Toradol aborted her migraine symptoms within 20 minutes, to conclude that while Plaintiff has medically-determinable impairments, her allegations were "considerably broader and more restricted than is established by the medical evidence." (R. at 18.) And a review of the record reveals substantial support for the ALJ's findings. (*See* R. at 602, 605, 617, 689.) *Robinson*, 426 F.Supp.3d at 421 ("Because the ALJ's discussion and findings regarding the subjective complaints are supported by [the] record as a whole, a remand on this basis is not warranted."). *See also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (the Court cannot "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ"). Accordingly, remand on the basis that the ALJ did not explicitly reference Plaintiff's Toradol side effects in his hearing decision is not necessary. It is clear that they were, in fact, considered.

Moreover, Plaintiff has identified no limitations beyond those the ALJ

included in the RFC assessment resulting from the alleged side effects of Toradol,

either in her arguments in support of her summary judgment motion or by

reference to the medical record.  And, as provided above, Plaintiff bears the burden

of proving a lack of RFC.  *Jordan*, 548 F.3d at 423 (citing *Her*, 203 F.3d at 392).

Finally, because the Court should find no RFC error on the above basis, it

should decline to find error with the hypothetical question posed to the VE, as

well.  *See Webb*, 368 F.3d at 631-33; *Stec*, 432 F.Supp.3d at 728 ("While Plaintiff

also argues that the ALJ erred by failing to include a reference to the alleged side

effect in the hypothetical question to the VE, it is well settled that the ALJ is not

obliged to credit rejected allegations of limitation in the question to [the] VE or by

extension, in the ultimate RFC.") (citing *Stanley v. Sec'y of Health and Human

Servs.*, 39 F.3d 115,118-19 (6th Cir. 1994)).

> **c.**   **The court should reject Plaintiff's argument that a
> lack of substantial evidence supports her RFC
> assessment because the ALJ failed to account for her
> visual impairment**

Plaintiff next argues that, though the ALJ's exclusion of her visual

impairment from the list of severe impairments is harmless, "the ALJ erred in

failing to account for this impairment at all in the RFC finding, or in explaining

why he did not feel this impairment would cause significant work-related

limitations."  (ECF No. 15, PageID.793-794.)  However, as asserted by the

Commissioner (ECF No. 18, PageID.823), Plaintiff fails to carry her burden of

establishing that any visual impairments resulted in functional limitations beyond

those the ALJ included in his RFC assessment, *Jordan*, 548 F.3d at 423, stating

only that "the RFC finding does not account for limitations from [her] visual

impairments, as it cannot be assumed that the limitation to no machinery or

unprotected heights sufficiently takes her visual disturbances into consideration"

(ECF No. 15, PageID.793-794).  And, although the medical records she cites

support her assertion of visual impairment, they do not identify any resulting

limitations beyond those included in her RFC.  (*See* R. at 534, 536, 668, 675.)[11]

### d.  The Court should reject Plaintiff's argument that the ALJ erred at Step 5

Finally, Plaintiff argues that "the finding that she could perform medium

work at step five is entirely inconsistent with the *objective* medical evidence

documenting reduced strength in the upper extremities, frequent falls, and unsteady

gait even with the use of a walking aid."  (ECF No. 15, PageID.794.)  Again, to the

extent Plaintiff frames this argument as a challenge to the ALJ's Step 5

determination (ECF No. 15, PageID.794), she is in actuality challenging the RFC

determination.  *See Kirchner*, 2013 WL 5913972, at *11 ("Kirchner's Step Five

---

[11] A medical record from July 2017 states that Plaintiff's falls seem to occur more at night with decreased vision (R. at 536), but the RFC contains limitations on exposure to unprotected heights, dangerous machinery, or commercial driving (R. at 14).

argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").  Nevertheless, as described above, any error here, if true, would be harmless, as the ALJ found at Step 4 that Plaintiff was capable of performing her past work as a software engineer or stock broker as actually performed at the medium level, or as generally performed at the sedentary level. (R. at 18.)  And Plaintiff only appears to be challenging the RFC on this basis insofar as it resulted in the ALJ's conclusion that she could perform medium work. Since the ALJ determined at Step 4 that the claimant can perform past relevant work, either as previously performed or as generally performed, he did not need to complete the remaining steps of the sequential evaluation.  20 C.F.R. § 404.1520(a), 416.920(a).

### F.    Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 15), **GRANT** Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

23

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  January 11, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE